# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

RODNEY S. MEANS,          )
                                  )
       Plaintiff,           )
                                  )
      v.                 )      CAUSE NO.: 2:06-CV-409-TLS
                                  )
AMERIQUEST MORTGAGE      )
COMPANY, *et al.*,           )
                                  )
       Defendants.       )

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [ECF No. 155] filed by Defendant Deutsche Bank National Trust Company, and a Motion for Summary Judgment [ECF No. 158] filed by Defendant Ameriquest Mortgage Company. For the reasons discussed below, the Court will grant both Motions for Summary Judgment.

## PROCEDURAL BACKGROUND

The Court previously outlined the history of this case in its November 24, 2009, Opinion and Order [ECF No. 112]. The Court will here summarize and supplement that procedural history.

The Plaintiff instituted this lawsuit on November 7, 2006, in the Lake Circuit Court, Lake County, Indiana. In his Complaint and Demand for Jury Trial [ECF No. 1], the Plaintiff, Rodney S. Means, alleged that Defendants Ameriquest Mortgage Company and Mortgage Information Services, Inc., violated the federal Truth in Lending Act ("TILA" or "the Act"), 15 U.S.C. §§ 1601 *et seq.*, Indiana's UCC disclosure law, I.C. §§ 24-4.5-3-301 *et seq.*, and Indiana's civil deception and civil mischief statutes, I.C. §§ 34-24-3-1, 35-43-1-2, 35-43-5-3, and were liable under theories of misrepresentation and breach of contract/promissory estoppel. On December 8, 2006,

Defendant Ameriquest Mortgage Company removed the case to this Court. (Notice of Removal, ECF No. 2.)

In 2008, the Court granted the Plaintiff's requests to file both a First and a Second Amended Complaint [ECF Nos. 40 & 59]. The following parties were then added as Defendants: Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-R-1; Ameriquest Capital Corporation; ACC Capital Holdings Corporation; and Ameriquest Mortgage Securities, Inc.

On October 27, 2008, the Plaintiff filed a Chapter 7 Voluntary Petition in the bankruptcy court, which automatically stayed all pending court proceedings including this litigation. (Notice of Bankruptcy, ECF No. 87.) On April 20, 2009, the bankruptcy court issued an order discharging the Plaintiff's debt in bankruptcy.

In 2009, after the bankruptcy discharge, the Plaintiff filed a series of motions requesting that the Court restore the case to its trial docket. On November 24, 2009, the Court entered an Opinion and Order denying the Plaintiff's request, which the Court construed as a motion to withdraw the reference from the bankruptcy court. (Op. & Order, ECF No. 112.) However, after the bankruptcy court declined to exercise jurisdiction on August 4, 2010 [ECF No. 113], the Court granted the Plaintiff's renewed motion to restore the case to the trial docket in a telephonic status conference held on December 14, 2010. On March 17, 2011, the Court entered an Opinion and Order [ECF No. 123] granting the Plaintiff leave to file a Third Amended Complaint [ECF No. 124] which no longer listed the following defendants: Defendant Mortgage Information Services, Defendant ACC Capital Holdings, and Defendant Ameriquest Capital Corporation. On May 5, 2011, the Court granted the Plaintiff leave to file a Fourth Amended Complaint [ECF No. 132] which clarified that the bankruptcy trustee was no longer a plaintiff in this matter. At a

telephonic conference held on June 27, 2012, the Court granted the Plaintiff's motion to dismiss Defendant American Home Mortgage Servicing. The only Defendants remaining in this matter as of June 27, 2012, are Ameriquest Mortgage Company and Deutsche Bank National Trust Company.

Defendant Deutsche Bank filed its Motion for Summary Judgment [ECF No. 155] on January 23, 2012, along with a Memorandum in Support [ECF No. 156], a Statement of Material Facts [ECF No. 157], and an Amended Statement of Material Facts [ECF No. 168-10] filed when the Court granted the Agreed Motion to File Amended Local Rule 56-1 Statements [ECF No. 168]. The Plaintiff filed a Response [ECF No. 169] to Defendant Deutsche Bank's Motion on February 21, and Defendant Deutsche Bank filed a Reply [ECF No. 175] on March 8. Additionally, Defendant Ameriquest Mortgage Company (AMC) filed its Motion for Summary Judgment [ECF No. 158] on January 24, 2012, along with a Memorandum in Support [ECF No. 159], a Statement of Material Facts [ECF No. 160], and an Amended Statement of Material Facts [ECF No. 168-1] filed when the Court granted the Agreed Motion to File Amended Local Rule 56-1 Statements [ECF No. 168]. The Plaintiff filed a Response [ECF No. 172] to Defendant AMC's Motion on February 23, and Defendant AMC filed a Reply [ECF No. 174] on March 8. Finally, the Court entered an Order on June 28, 2012, granting the Plaintiff's Motion to File Sur-Reply [ECF No. 178]. The Plaintiff filed a Sur-Reply [ECF No. 191] to Defendant AMC's Motion for Summary Judgment on July 17, and Defendant AMC filed a Sur-Sur-Reply [ECF No. 192] on July 30, 2012. The Motions for Summary Judgment are fully briefed and ready for ruling. Furthermore, they are the only pending motions remaining in this matter.

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Federal Rule of Civil Procedure 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp*., 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotation marks omitted).

## THE TRUTH IN LENDING ACT

The Truth in Lending Act ("TILA" or "the Act"), 15 U.S.C. §§ 1601 *et seq*., was enacted in 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card

practices." 15 U.S.C. § 1601(a). Congress delegated authority for the implementation of the Act to the Federal Reserve Board, although the 2010 Amendments to the Act gave that authority to the Bureau of Consumer Financial Protection, *see id.* § 1604, and the comprehensive set of rules for regulating truth in lending is contained in what is known as Regulation Z. "[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

The Act requires that for "each consumer credit transaction other than under an open end credit plan," a creditor must disclose, *inter alia*, the following: (1) the identity of the creditor required to make disclosure; (2) the "amount financed," using that term (this is the amount of credit of which the consumer has actual use); (3) a statement of the consumer's right to obtain a written itemization of the amount financed; (4) the "finance charge," using that term; (5) the finance charge expressed as an "annual percentage rate," using that term; (6) the sum of the amount financed and the finance charge, using the term "total of payments;" and (7) the number, amount, and due dates or period of payments scheduled to repay the total of payments. 15 U.S.C. § 1638(a)(1)–(7).

Credit is "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f); *see also* 12 C.F.R. § 226.2(14). A consumer is a "natural person to whom consumer credit is offered or extended." 12 C.F.R. § 226.2(11). A creditor is

> a person who both (1) regularly extends, whether in connection with loans, sales of
> property or services, or otherwise, consumer credit which is payable by agreement

in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable . . . .

15 U.S.C. § 1602(g). A creditor who fails to comply with the requirements imposed by the Act is amenable to suit for actual damages, statutory damages, costs of the action, and reasonable attorney's fees. 15 U.S.C. § 1640(a).


# FACTS

The facts stated here are agreed to by the parties except where the Court indicates that a specific fact is alleged by a particular party.

The Plaintiff is a retired police officer who owns a home located at 7611 Maple Ave., Gary, Indiana 46403. In May 2003, the Plaintiff obtained a loan from Defendant AMC, secured by a mortgage on his home. This 2003 mortgage loan included an adjustable interest rate, and a prepayment penalty that would apply if the Plaintiff refinanced the loan within three years. (*See* Adjustable Rate Note, ECF No. 168-2.) On October 26, 2005, "AMC Mortgage Services, Inc." generated a document entitled "PAYOFF STATEMENT FOR INTERNAL USE ONLY" stating that the Plaintiff's total unpaid principal balance on his 2003 mortgage loan was $97,337.23, his prepayment penalty was $4,562.68, and the expiration date for his prepayment penalty was May 7, 2006. (Payoff Statement, ECF No. 172-3 at 3.)

In October 2005, a representative of Defendant AMC contacted the Plaintiff and asked him if he would be interested in refinancing his loan at a fixed interest rate. The Plaintiff claims that the representative of Defendant AMC told him his home was worth more than it was actually worth based on an improper appraisal. The Plaintiff admits, however, that at the time he

applied for the 2005 loan he did not actually believe that his home was worth the amount reflected in Defendant AMC's appraisal.

Nevertheless, the Plaintiff closed on a new loan on November 5, 2005. Defendant AMC prepared a loan document listing the balance of his 2003 loan as $97,398, and the Plaintiff signed that document on November 5. (2005 Loan Document, ECF No. 172-3 at 1.) Before closing on the 2005 loan on November 5, the Plaintiff also signed a HUD-1 Settlement Statement that indicated the total payoff for the Plaintiff's 2003 loan was $103,249.28. (HUD-1 Settlement Statement, ECF No. 168-7 at 2.) The Plaintiff states that he did not realize until speaking with an attorney that he had been charged a prepayment penalty on a loan which Defendant AMC had solicited him to refinance early. The total loan amount for the 2005 transaction was $165,600. (2005 Loan Document.)

At the November 5 closing, Defendant AMC provided the Plaintiff with two documents informing him of his right to rescind the loan transaction. The first document, entitled "NOTICE OF RIGHT TO CANCEL," stated:

> You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:
> 1. The date of the transaction, which is 11-5-05;
> or
> 2. The date you received your Truth in Lending disclosures;
> or
> 3. The date you received this notice of your right to cancel.
> If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.
> You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If

it is impractical or unfair for you to return the property you must offer its reasonable
value.

(Notice of Right to Cancel, ECF No. 168-8.) The first document further informed the Plaintiff of

how to cancel the transaction, and stated that the final date to cancel was "11-9-05." (*Id.*) At the

November 5 closing, the Plaintiff was given a second document, entitled "ONE WEEK

CANCELLATION PERIOD," which stated:

> **You have the right under Federal or state law to three (3) business days during**
> **which you can cancel your loan for any reason.** This right is described in the
> Notice of Right to Cancel you have received today.
> Ameriquest Mortgage Company believes that a loan secured by your home is one of
> the most important financial decisions you can make. To give you more time to study
> your loan documents, obtain independent advice and/or shop for a loan that you
> believe suits you better, **we provide you with one-week (which includes the day**
> **you sign the loan documents) to cancel the loan with no cost to you.** No money
> will be disbursed before 10:00 a.m. on the first business day after this period expires.
> Business days are Monday through Friday, excluding federal legal holidays.
> For example, if your loan closes on a Tuesday, you could cancel from that Tuesday
> through midnight of the following Monday.

(One Week Cancellation Period, ECF No. 168-9.) The second document further informed the

Plaintiff of how to cancel the transaction. The Plaintiff signed the second document on

November 5, which indicated his receipt and acknowledgment of the contents of the second

document. (*Id.*)

The Plaintiff admits that he received the loan documents at the November 5 closing for

the 2005 loan, that he had an opportunity to seek clarification as needed, and that he actually did

seek clarification when he needed it. Furthermore, the Plaintiff admits that he does not recall

reviewing either the Notice of Right to Cancel form or the One Week Cancellation form at the

November 5 closing, although he did receive them, and admits that he did not consider

cancelling his loan based on either form. He admits that he only "glanced over" the 2005 loan

documents he received at the November 5 closing, and did not study them because of a "lazy attitude." (Means Dep. 79:5–7, Sept. 10, 2008, ECF No. 168-3.) Although the Plaintiff claims that various closing costs for the 2005 loan transaction were not bona fide and reasonable, the Plaintiff admits that he has "no reason . . . to believe" that any of the services associated with these costs were not actually provided. (*Id.* 184:12.) Nor does the Plaintiff know whether the costs charged for these services were outside market rates. (*Id.* 184:6–9.)

On February 1, 2006, the Plaintiff's 2005 loan was assigned to Defendant Deutsche Bank as trustee for the note and mortgage pursuant to a Pooling and Servicing Agreement. (*See* Campbell Aff. ¶ 2, ECF No. 168-17.) On August 30, 2006, the Plaintiff sent a rescission notice to Defendant AMC, purporting to rescind the 2005 loan transaction. (ECF No. 169-1 at 3–4.) On September 20, 2006, Defendant AMC responded, denying the Plaintiff's rescission request. (*Id.* at 5.) Further, on November 28, 2007, the Plaintiff sent a rescission notice to Defendant Deutsche Bank, purporting to rescind the 2005 loan transaction. (*Id.* at 6–8.) On April 9, 2008, Citi Residential Lending responded on behalf of Defendant Deutsche Bank, denying the Plaintiff's rescission request. (*Id.* at 9.) The Plaintiff filed for bankruptcy in 2008, and on April 20, 2008, the bankruptcy court entered an order discharging the Plaintiff's debt on the 2005 loan. (Fourth Am. Compl. ¶ 15, ECF No. 132.)

## ANALYSIS

The Summary Judgment Motions filed by Defendants AMC and Deutsche Bank center around two questions. The first question is whether a reasonable jury could find in favor of the Plaintiff on his TILA claims against Defendant AMC. If the Plaintiff has not established triable

claims for TILA violations, then he will also have no claims for denial of rescission under the Act, and no claim under the Indiana UCC. Furthermore, if the Plaintiff has not established TILA claims against Defendant AMC, he will have no claims against Deutsche Bank for either TILA violations or denial of rescission. The second question is whether a reasonable jury could find in favor of the Plaintiff on his Indiana statutory civil mischief or civil deception claims.

With these two questions framing its analysis, the Court will address the Motions for Summary Judgment filed by Defendants AMC and Deutsche Bank.

**A.      Defendant AMC's Motion for Summary Judgment**

***1.      No Reasonable Jury Could Find for the Plaintiff on His TILA Claims Against Defendant AMC***

In his Fourth Amended Complaint, the Plaintiff alleges five different TILA violations by Defendant AMC. The Plaintiff alleges that: 1) the Notice of Right to Cancel was incorrectly dated; 2) the One Week Cancellation form, given together with the Notice of Right to Cancel, was confusing; 3) Defendant AMC gave the Plaintiff the wrong version of the Notice of Right to Cancel; 4) Defendant AMC charged the Plaintiff closing costs that were not bona fide or reasonable; and 5) Defendant AMC failed to honor the Plaintiff's proper demand for rescission. The Court will discuss each of these bases for recovery under the Act.

*a.      The Notice of Right to Cancel Was Correctly Dated*

At loan closing on November 5, 2005, a representative from Defendant AMC told the Plaintiff that the loan payoff figures in the HUD-1 Settlement Statement were only estimates, not

to be finalized until November 14. Yet the Notice of Right to Cancel states that the Plaintiff's last date to cancel under federal law was November 9. In his Fourth Amended Complaint, the Plaintiff alleges that the Notice of Right to Cancel was incorrectly dated because it listed a cancellation date "five (5) days before the loan transaction was to be finalized." (Fourth Am. Compl. ¶ 35.) Defendant AMC argues that the right of rescission expires at "midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635(a). Because "[a] transaction is consummated on the date the loan is closed," *Elias v. Stewart Title of Ill.*, No. 09-6773, 2011 WL 1157534, at *1 (N.D. Ill. Mar. 29, 2011), Defendant AMC argues the Notice of Right to Cancel correctly informed the Plaintiff of his right under federal law to rescind until November 9, three business days from November 5.

The Court agrees with Defendant AMC that the Plaintiff became contractually obligated on the loan when he signed the loan documents on November 5, and that the November 9 date on the Notice of Right to Cancel was correct. The Plaintiff was contractually obligated when the loan closed, irrespective of whether payoff figures on the HUD-1 Settlement Statement, representing the payment of other obligations, had yet been finalized. The Plaintiff appears to concede this point.[1] For all these reasons, the Plaintiff has failed to show that a reasonable jury could decide that the Notice of Right to Cancel was misdated, and the Court will grant Defendant AMC's Motion for Summary Judgment on this issue.

---

[1] In the Plaintiff's Sur-Reply, he states that he has "conceded [the] theory [for TILA recovery] in ¶ 21(a) . . . and that theory is therefore moot." (Pl.'s Sur-Reply ¶ 24, ECF No. 191.) Paragraph 21 of the Plaintiff's Sur-Reply does not contain subheadings; however paragraph 23 does contain a letter (a) subheading, listing the theory that the Notice of Right to Cancel form was misdated, and it is this theory that the Plaintiff appears to be conceding.

*b.*     *The One Week Cancellation Form Was Not Confusing*

As articulated above, at closing for the 2005 loan, Defendant AMC provided the Plaintiff with both a Notice of Right to Cancel and a One Week Cancellation form. The first document informed the Plaintiff that under federal law he had three business days from the date of closing to rescind the transaction. The second document informed the Plaintiff that Defendant AMC was affording him up to seven days to cancel the transaction. In his Fourth Amended Complaint, the Plaintiff claims that the One Week Cancellation form "conflicted with the federal right to cancel notice, thereby rendering the federal notice unclear and confusing." (Fourth Am. Compl. ¶ 36.) If it did, then the Plaintiff has established a violation of 15 U.S.C § 1632(a), which states that TILA-required disclosures must be "disclosed clearly and conspicuously." *See also* 12 C.F.R. §§ 226.17(a)(1) & 226.23(b)(1) (stating that the notice of right to rescind shall be disclosed "clearly and conspicuously").

Defendant AMC argues that the One Week Cancellation form is not confusing; on the contrary, Defendant AMC argues that the One Week Cancellation form clearly states the federal three business day right to cancel, and then explains that Defendant AMC is affording one week instead of three business days for cancellation in order to allow the borrower to think carefully about an important financial decision. Defendant AMC notes that numerous courts have previously held that the One Week Cancellation form is not unclear for TILA purposes. *See McMillian v. AMC Mortg. Servs., Inc.*, 560 F. Supp. 2d 1210, 1220 n.16 (S.D. Ala. 2008) (stating that the One Week Cancellation form "actually reinforces and reiterates the Notice of Right to Cancel" and that, "[r]eviewing both forms in tandem, . . . no reasonable borrower could be confused or misled as to the operable TILA cancellation deadline"); *Hamm v. Ameriquest*

*Mortg. Co.*, No. 05 C 227, 2005 WL 2405804, at *3 (N.D. Ill. Sept. 27, 2005) (stating that "[i]t would be clear to an ordinary consumer that the three day recision period and the one week cancellation period provided to [the plaintiff] are not synonymous"), *rev'd on other grounds*, 506 F.3d 525 (7th Cir. 2007); *Kitchen v. Ameriquest Mortg. Co.*, No. 1:04-CV-2750-BBM, 2005 U.S. Dist. LEXIS 43937, at *18 (N.D. Ga. Apr. 29, 2005) (stating that "Ameriquest's provision of additional time to rescind beyond that required by TILA [did not] in any way vitiate[] [the plaintiff]'s rights under TILA to rescind within three business days"); *Swayze v. Ameriquest Mortg. Co.*, No. 1:03-cv-733-WSD, 2005 WL 6763571, at *2 (N.D. Ga. Feb. 16, 2005) (stating that the "argument that this additional contract right wrongfully confused [p]laintiffs regarding their statutory rights is not persuasive or logical"). *But see Washington v. Ameriquest Mortg. Co.*, No. 05 C 1007, 2006 WL 1980201, at *6 (N.D. Ill. July 11, 2006) (finding that "a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer"); *Jones v. Ameriquest Mortg. Co.*, No. 05-CV-0432, 2006 WL 273545, at *8 (N.D. Ill. Jan. 31, 2006) ("A reasonable fact finder . . . could conclude that, for an ordinary consumer, the One-Week form detracts from the clarity of the federal form in that the One-Week form purports to be a mere extension of the TILA right but does not explain the differences, if any, in the rescission rights. Indeed, a fact finder is needed to determine whether those differences exist.").[2] Defendant AMC also argues that providing an extended rescission period furthers the purpose of the Act, namely, to promote "the informed use of credit." 15 U.S.C. § 1601(a); *Milhollin*, 444 U.S. at 559 (stating that "[t]he Truth in Lending Act

---

[2]The Court notes that the Seventh Circuit has declined to decide this issue. *See Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 527 (7th Cir. 2007) ("We do not reach the issue concerning the notice of the right to rescind.").

has the broad purpose of promoting 'the informed use of credit'"). Finally, Defendant AMC argues that because the Plaintiff admits he did not read the One Week Cancellation form and did not consider whether to cancel his loan, he was not confused by the form.

The Court finds that the One Week Cancellation form is not unclear and is not confusing. It not only references the federal right to rescission within three days, but it specifically references the Notice of Right to Cancel. The Court finds that it would be clear to an ordinary consumer that federal law provides three business days to rescind, but the consumer is being given one week from the date of closing in which to cancel. The Court finds that this furthers the purpose of the Act by extending the time in which a consumer can exercise the informed use of credit. The Court does not find relevant the Plaintiff's subjective lack of confusion as TILA is concerned with the form of the documents provided, not with a borrower's subjective experience. *See Hamm*, 506 F.3d at 529 ("It is immaterial if the borrower in a particular transaction made the right assumptions about the terms and documents presented to her, if the form otherwise does not comply with the statute and regulations."); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) ("Whether a particular disclosure is clear for purposes of TILA is a question of law that 'depends on the contents of the form, not on how it affects any particular reader.'") (quoting *Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 515 (7th Cir. 1999)). But because the form itself is clear, and would be clear to any ordinary consumer, the Court finds that no reasonable jury could conclude that the One Week Cancellation form, given to the Plaintiff in conjunction with the Notice of Right to Cancel, violated the Truth in Lending

Act, and the Court will grant Defendant AMC's Motion for Summary Judgment on this issue.[3]

### c.     Defendant AMC Has Established That it Provided the Correct Notice of Right to Cancel

The Plaintiff's primary argument involves the language of the Notice of Right to Cancel form itself. Section 1635(h) of the Act provides that, in order to insulate itself from claims based on improper rescission notice, a creditor must provide a consumer with "the appropriate form of written notice published and adopted by the Bureau, or a comparable written notice of the rights of the obligor." 15 U.S.C. § 1635(h). Regulation Z instructs that "[t]o satisfy the disclosure requirements . . . the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice." 12 C.F.R. § 226.23(b)(2). Appendix H to Regulation Z sets forth two forms of written notice, to be given to the consumer in two different scenarios. Form H-8 is titled "Rescission Model Form (General)," id. § 226, App. H, and contains nearly identical language to that used by Defendant AMC in the Notice of Right to Cancel provided to

---

[3]Defendant AMC also argues that the Plaintiff waived the contention that the One Week Cancellation form was unclear for TILA purposes by not responding to Defendant AMC's arguments on this point in the Plaintiff's Response to the Motion for Summary Judgment. The Court agrees that "a plaintiff cannot rely on his pleadings at the summary judgment stage," *Cooper v. City of Fort Wayne*, No. 1:06-CV-161-TS, 2007 WL 3232456, at *5 (N.D. Ind. Oct. 30, 2007), and that by merely listing this as one of his TILA claims in his Response, the Plaintiff came perilously close to waiving this claim altogether. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532 (7th Cir. 2011) (holding that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quoting *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008)). The Court agrees with Defendant AMC to the extent that the Plaintiff made no effort to articulate the rationale espoused by the courts that have found the One Week Cancellation form to be unclear, specifically that it could confuse a borrower about "the consequences of choosing one method of rescission over the other, given that the second form does not explain whether or not cancelling in seven days affords the borrower the statutory protections that cancelling within three days does. *Jones*, 2006 WL 273545 at *7. The Plaintiff has not argued that theory, and has not offered citations to any authority setting forth that theory, so that theory is waived. Nevertheless, the Court finds that judgment on the merits of the claim is appropriate, particularly where all the authority needed to decide in the Plaintiff's favor had been discussed in Defendant AMC's Motion. In conclusion, as stated above, the Court finds that the One Week Cancellation form is not unclear for TILA purposes.

the Plaintiff on November 5, 2005. Form H-9 is titled "Rescission Model Form (Refinancing with Original Creditor)," *id.*, and contains language that is different from the Notice of Right to Cancel provided to the Plaintiff at the November 5 closing. Specifically, whereas the first sentence of the Notice of Right to Cancel informed the Plaintiff that he was "entering into a transaction that [would] result in a mortgage/lien/security interest on [his] home" (ECF No. 168-8), the first sentence of the Form H-9 model language provides that a consumer is "entering into a new transaction to increase the amount of credit previously provided," 12 C.F.R. § 226, App. H. Further, while the Notice of Right to Cancel informed the Plaintiff that he had "a legal right under federal law to cancel this transaction," and that if he did so Defendant AMC would also cancel its security interest (ECF No. 168-8), the Form H-9 model language provides that a consumer has "a legal right under federal law to cancel this new transaction," and that if a consumer cancels "this new transaction," it will not affect the amount the consumer presently owes, 12 C.F.R. § 225, App. H. In sum, the Form H-9 model language advises a consumer of different rescission rights than the Form H-8 model language. Because Defendant AMC undisputedly provided the Plaintiff with the Form H-8 model language, and because the Plaintiff argues the Form H-9 model language was appropriate in his situation, the Plaintiff claims a TILA violation by Defendant AMC. *See Handy*, 464 F.3d at 764 (finding a TILA violation where a creditor provided a consumer with both a Form H-8 and a Form H-9).

Defendant AMC argues, first, that providing the Form H-8 notice in this case was appropriate because Defendant AMC was no longer the holder of the Plaintiff's 2003 note at the time of the 2005 loan transaction, as that loan had been sold into a securitization in 2003. Thus, Defendant AMC argues, the 2005 loan transaction was not a same creditor refinancing requiring

the use of the Form H-9 model language. In support, Defendant AMC produces the Affidavit of Mike Gibson, who purports to be the current president of Defendant AMC, and who states that "on November 12, 2003, the 2003 Loan [to the Plaintiff] was assigned by Ameriquest to a third-party securitization trust." (Gibson Aff. ¶ 4, ECF No. 174-1.) Defendant AMC supplements its argument that the H-8 notice was appropriate in this case with a policy argument. It argues that because the H-8 situation provides for total rescission and requires release of the security interest, while the H-9 situation provides for only partial rescission (to the extent the new loan exceeds the value of the old loan) and does not require release of the security interest, it would defeat the policy behind the Act if a creditor could prevent the possibility of total rescission and obviate the need to release the security interest by simply assigning the loan to a securitization. It would not further the purposes of the Act, Defendant AMC argues, if a creditor could avoid the H-8 notice requirements simply by assigning the loan elsewhere. Rather, in a situation where the loan has been assigned, a creditor should be required to give the H-8 notice and should be subject to total rescission and the requirement to release the security interest.

Defendant AMC also argues that even if the Plaintiff had been given the wrong notice, the Seventh Circuit's holding in *Handy* is distinguishable because it found a TILA violation where the plaintiff was given both the H-8 and H-9 forms, and did not address whether being given the H-8 notice in a situation calling for H-9 notice would violate the Act.

Because the Plaintiff had no previous opportunity to respond to the Gibson Affidavit, which was attached to Defendant AMC's Reply, the Court allowed the Plaintiff to file a Sur-Reply. In his Sur-Reply, the Plaintiff argues that Gibson's LinkedIn profile indicates he has not worked for Defendant AMC since May 2010, which would undercut his claim to be the current

president. The Plaintiff also argues that although Gibson attests the Plaintiff's 2003 loan was securitized in 2003, the Pooling and Servicing Agreement attached to his affidavit does not specifically show that the Plaintiff's 2003 loan was sold as part of the securitization. Therefore, the Plaintiff argues that Gibson's affidavit is "non-credible and insufficient to prove that at the time of Means' 2005 AMC refinance, the 2003 AMC loan had been sold to another note holder." (Pl.'s Sur-Reply ¶ 16, ECF No. 191.) In its Sur-Sur-Reply, Defendant AMC points out that the Plaintiff "concedes that, if Ameriquest was not the holder of the 2003 Loan when Plaintiff obtained his 2005 Loan, Ameriquest's use of the general form was proper." (Def. AMC's Sur-Sur-Reply 7, ECF No. 192.) Defendant AMC also argues that the Plaintiff has failed to produce any competent evidence to rebut the factual assertions in Gibson's affidavit. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004) ("The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal."). Defendant AMC argues that it has produced sworn testimony to the transfer of the Plaintiff's 2003 loan, and that in the absence of evidence to the contrary, it need not produce each and every document that facilitated the transfer. Finally, Defendant AMC notes that its entire business model consisted of originating and then assigning mortgage loans, and that the Plaintiff has shown no reason why this one loan out of millions would not have been securitized, as Gibson swears it was.

The Court finds that Defendant AMC has shown that use of the H-8 notice was appropriate in this situation, particularly because the Plaintiff has conceded that H-8 notice was appropriate if Defendant AMC did not hold his 2003 loan at the time of the 2005 loan transaction. Defendant AMC has produced competent evidence of the transfer of the Plaintiff's

2003 loan, and the Plaintiff, when given opportunity, has not introduced competent evidence in rebuttal. Even had the Plaintiff established that Gibson is no longer the president of Defendant AMC, the Plaintiff did not show how that discrepancy would undermine the credibility of Gibson's statement that the Plaintiff's 2003 loan was securitized in 2003, particularly because the LinkedIn profile cited by the Plaintiff indicates that Gibson worked for Defendant AMC during the relevant time period.[4]

The Court also agrees with the policy argument advanced by Defendant AMC. It would not further the purposes of the Act if lenders could extinguish the possibility of total rescission on a new loan and obviate the need to release the security interest by simply assigning the original loan to another holder. Instead, it was appropriate for Defendant AMC, no longer the holder of the Plaintiff's original loan, to give H-8 notice of rescission allowing for total rescission and release of the security interest.

The Court disagrees with Defendant AMC's attempt to distinguish *Handy*, however. The Seventh Circuit in *Handy* held that giving both the H-8 and H-9 notices "violated TILA's requirement of a clear and conspicuous disclosure of the effects of rescission." *Handy*, 464 F.3d at 764. If giving both notices violated the requirement to clearly disclose the effects of rescission, giving the wrong notice entirely—including incorrect rescission instructions—would surely be a TILA violation. However, in this case the Court determines that Defendant AMC gave the correct notice of rescission. For all these reasons, the Court finds that no reasonable jury could find that Defendant AMC's H-8 notice of rescission, given to the Plaintiff on

---

[4]The Court notes, further, that 2012 records of the Illinois Secretary of State, submitted by Defendant AMC in its Sur-Sur-Reply at 8 n.3, show Gibson as current president of Defendant AMC. Illinois Secretary of State Corporation File Detail Report, http://www.ilsos.gov/corporatellc/CorporateLlcController.

November 5, 2005, violated the Act, and the Court will grant Defendant AMC's Motion for Summary Judgment on this issue.

d.       *The Plaintiff Has Failed to Show That Closing Costs Were Not Bona Fide or Reasonable*

In his Fourth Amended Complaint, the Plaintiff claims that Defendant AMC understated the finance charge on his 2005 loan by excluding from the listed finance charge certain fees that were not bona fide or reasonable. (Fourth Am. Compl. ¶¶ 37–38.) Under TILA, certain items "shall not be included in the computation of the finance charge" on loan transactions. 15 U.S.C. § 1605(e). Specifically, in mortgage transactions, the following fees are excluded from the finance charge "if the fees are bona fide and reasonable in amount:" title fees, loan document preparation fees, and property appraisal fees. 12 C.F.R. § 226.4(c)(7). Application fees and discount fees are also excluded. *Id.* §§ 226.4(c)(1) & (8). Defendant AMC argues that under the Seventh Circuit's holding in *Guise v. BWM Mortgage, LLC*, 377 F.3d 795 (7th Cir. 2004), the Plaintiff's claims cannot succeed. The *Guise* court found that a district court was correct to hold that a title insurance fee was bona fide where "[t]he plaintiffs did not allege in their complaint . . . that they did not receive title insurance . . . from [the lender], nor did the complaint allege any facts to give rise to the inference that [the lender] failed to perform those services." 337 F.3d at 800 (citing *Brannam v. Huntington Mortg. Co.*, 287 F.3d 601, 606 (6th Cir. 2002) (stating that a charge is bona fide if the "services for which the fees are imposed are performed")). The *Guise* court also discussed whether a charge was reasonable based on the "prevailing market rate." 337 F.3d at 801. Defendant AMC argues that the Plaintiff's claim cannot succeed because the Plaintiff admits that the services were actually provided, meaning they were bona fide under the

*Guise* holding, and because the Plaintiff has produced no evidence to suggest the rates charged for the services were anything other than the prevailing market rate, meaning they were reasonable under the *Guise* formulation. The Plaintiff responds that some of the fees were not bona fide or reasonable because they were duplicate fees. Specifically, the Plaintiff notes that he was charged a $200.00 appraisal fee and a $125.00 property valuation fee. (HUD-1 Settlement Statement, ECF No. 168-7.) Defendant AMC responds that the Plaintiff still presents no argument that the services associated with the fees were not actually provided, and does not argue that the charges for the services were outside of market rates. Defendant AMC also argues that even if a $200.00 appraisal fee was not bona fide or reasonable, the disclosure of the finance charge and associated disclosures is treated as accurate as long as "the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended." 15 U.S.C. § 1605(f)(2)(A). As the total amount of credit extended in the 2005 loan transaction was $165,600, Defendant AMC argues a $200.00 understatement of the finance charge would fall within the $828 tolerance for the loan and the disclosure of the finance charge would still be treated as accurate.

The Court agrees with Defendant AMC that the Plaintiff has failed to show that any of the charges were not bona fide or reasonable. The Plaintiff has admitted that the services associated with the charges were actually performed, and has introduced no evidence to suggest that the charges for the services were outside of prevailing market rates. Further, the Plaintiff has introduced no evidence to elucidate exactly what an appraisal fee or a property valuation fee entail. Although the names sound similar, the Plaintiff has introduced no evidence on which the Court could conclude they are actually synonymous. Finally, it appears that even if the greater of

the two fees was not bona fide or reasonable, it would fall within the tolerance for finance charge accuracy outlined in 15 U.S.C. § 1605(f)(2)(A).

The Plaintiff also asserts that the failure to include the prepayment penalty for the 2003 loan in the finance charge for the 2005 loan was a violation of TILA because it was not a bona fide and reasonable closing cost. Defendant AMC argues that the prepayment penalty for the 2003 loan had nothing to do with the 2005 loan and so could not have been listed as a closing cost for the 2005 loan. The Court agrees with Defendant AMC that the Plaintiff has not shown why the prepayment penalty on a separate loan should be included in the finance charge for the 2005 loan transaction. Accordingly, the Court finds the failure to list the prepayment penalty on the 2003 loan as part of the finance charge for the 2005 loan was not a TILA violation.

For all these reasons, the Court concludes that no reasonable jury could find that Defendant AMC violated the Act when it excluded from the finance charge certain closing costs for the 2005 loan, and when it did not list the prepayment penalty for the 2003 loan as a finance charge for the 2005 loan, and will grant Defendant AMC's Motion for Summary Judgment on this issue.[5]

e.     *Because the Plaintiff has not Established TILA Violations, the Plaintiff's Notice of Rescission Was Not Timely*

As discussed above, and as the Plaintiff was notified in the Notice of Right to Cancel, the

---

[5]Defendant AMC urges that the Plaintiff's arguments about costs excluded from the finance charge not being bona fide or reasonable have also been waived because the Plaintiff did little more in his responses than re-state the allegations from his Fourth Amended Complaint. As discussed above, the Court finds that although the Plaintiff has given this argument short shrift, the Plaintiff has not waived it. A decision on the merits is appropriate, and, as stated above, the Court finds that the Plaintiff has failed to show that a reasonable jury could find in his favor on this issue.

Plaintiff had three business days within which to exercise his statutory right to rescind the 2005

loan transaction. *See* 15 U.S.C. § 1635(a). However, "[i]f the required notice and material

disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving

rise to the right of rescission." 12 C.F.R. § 226.15(a)(3). The Plaintiff gave notice to Defendant

AMC of his intention to rescind the 2005 loan transaction on August 30, 2006, and he gave

notice of the same intention to rescind to Defendant Deutsche Bank on November 28, 2007. The

Plaintiff executed both of these notices within three years of the consummation of the 2005 loan

transaction on November 5, 2005. So if Defendant AMC had indeed withheld from him the

notice and/or material disclosures required under the Act, the Plaintiff would have a further

TILA violation claim for Defendant AMC's failure to honor his proper notice of rescission.[6]

Defendant AMC argues, however, that because the Plaintiff has failed to establish any TILA

violation, he also fails to establish a TILA violation for failure to honor his notice of rescission.

The Court agrees. The Court has already found that no reasonable jury could find in favor of the

Plaintiff on his allegations that Defendant AMC improperly dated the notice of rescission, that

Defendant AMC provided an unclear notice of his right to rescind under federal law by including

the One Week Cancellation form, that Defendant AMC provided him with the wrong notice of

rescission language, or that Defendant AMC understated the finance charge on his 2005 loan

transaction by charging fees that were not bona fide or reasonable. Because the Plaintiff has not

established a TILA violation, his statutory right to rescind the transaction expired after

---

[6]Moreover, as articulated below in the discussion of Defendant Deutsche Bank's Motion for
Summary Judgment, if the Plaintiff had a proper claim for rescission against Defendant AMC, then he
also had a proper claim for rescission against Defendant Deutsche Bank. 15 U.S.C. § 1641(c) ("Any
consumer who has the right to rescind a transaction under section 1635 of this title may rescind the
transaction as against any assignee of the obligation.").

November 9, 2005, and his one week to cancel the transaction expired after November 11, 2005.

Thus, his August 30, 2006, notice of rescission to Defendant AMC was not timely, no reasonable

jury could conclude that Defendant AMC's refusal to honor that notice of rescission violated the

Act, and the Court will grant Defendant AMC's Motion for Summary Judgment on this issue.

The Court notes that the parties have devoted a great deal of attention to the questions of

whether the Plaintiff is able to tender the amount necessary to effectuate rescission of his 2005

loan at all, and at what stage in the process the Plaintiff would be required to do so. Defendant

AMC argues that the Plaintiff was unable to make the payments on the loan itself, suggesting he

will be unable to tender back the original amount of the loan. The Plaintiff argues he will be able

to tender at the appropriate time, though his argument seems to hinge on the Court finding that

only a partial rescission is appropriate in his case, an argument the Court has already rejected

because Defendant AMC was not the holder of the Plaintiff's 2003 loan at the time of the 2005

loan closing. The Plaintiff also argues that he should not be required to tender until Defendant

AMC has effectuated rescission. Defendant AMC insists the Plaintiff must first show his ability

to tender.

A full rescission "encompasses a right to return to the *status quo* that existed before the

loan." *Handy*, 464 F.3d at 765–66 (quotation marks omitted). To effectuate such a rescission, the

obligor must return to the creditor everything he has received, and the creditor must release its

security interest. Additionally, the creditor generally forfeits its right to collect interest, and so

must reimburse the obligor for any interest paid while the loan was outstanding. *See id.* at 766. A

district court in the Northern District of Illinois recently discussed whether and how to require

tender of an obligor:

Section 1635(b) of TILA requires the creditor to rescind the loan before tender is made, "except when otherwise ordered by a court." 15 U.S.C. § 1635(b). Similarly, Regulation Z requires the creditor to rescind before the obligor is required to tender, unless "modified by court order," 12 C.F.R. § 226.23(d). The Seventh Circuit has not addressed whether it is necessary for a borrower to show her ability to tender the balance before rescission will be granted, and courts in this District are divided on the issue. *Compare AFS Fin., Inc. v. Burdette*, 105 F. Supp. 2d 881, 881 (N.D. Ill. 2001) ("a court, in the exercise of its equitable discretion, as confirmed by the last sentence of § 1635(b), can condition rescission upon tender of the amounts previously advanced, leaving the security interest in place until the tender is made") *and Personius v. HomeAmerican Credit, Inc.*, 234 F. Supp. 2d 817, 819 (N.D. Ill. 2002) ("there is no absolute prohibition against conditioning rescissions on some act by the borrower") *with Velasquez v. HomeAmerican Credit, Inc.*, 245 F. Supp. 2d 1043, 1045 (N.D. Ill. 2003) (holding that TILA and Regulation Z "are explicit that the consumer need not return money or property to the creditor until after the creditor has fulfilled its obligations under the statute") *and Tulumbuta v. Wilmington Fin., Inc.*, Case No. 09-c-4123, 2010 WL 6738070, at *[2] (N.D. Ill. June 24, 2010) ("those authorities suggest that a requirement that the homeowners allege that they are willing and able to tender is erroneous").

*Stewart v. BAC Home Loans Servicing, LP*, No.10 C 2033, 2011 WL 3510909, at *3 (N.D. Ill. Aug. 10, 2011). The *Stewart* court did not decide the tender issue because it had not yet determined that rescission was proper. *Id.*; *see Tulumbuta*, 2010 WL 6738070, at *1 (stating that "[w]here the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property").

Defendant AMC offers one additional argument against the Plaintiff's ability to tender. Defendant AMC points out that the Plaintiff's indebtedness on the 2005 loan has already been discharged in bankruptcy. Defendant AMC argues rescission is impossible because if this Court were to order the Plaintiff to tender back the 2005 loan proceeds it would amount to a violation of the post-bankruptcy discharge injunction. *See In re Kuehn*, 563 F.3d 289, 294 (7th Cir. 2009) (finding that an action that amounted to an attempt to collect a discharged debt violated the post-

discharge injunction). Defendant AMC argues, further, that "[r]eaffirmation is the only means by which a dischargeable debt may survive a Chapter 7 discharge," *In re Golladay*, 391 B.R. 417, 421 (Bankr. C.D. Ill. 2008), and because reaffirmation agreements are strictly voluntary, not even a court can "coerce an offeree-creditor to enter" a reaffirmation agreement, *In re Amoakohene*, 299 B.R. 196, 199 (Bankr. N.D. Ill. 2003). On the question of the possibility of rescission, the Plaintiff offers a limited rebuttal, arguing that rescission is possible even where a loan has been refinanced. *See Hubbard v. Ameriquest Mortg. Co.*, 624 F. Supp. 2d 913, 920 (N.D. Ill. 2008) ("the right of rescission outlives the refinancing of the loan"). *See also Handy*, 464 F.3d at 765 (affirming rescission after a loan has been paid in full). But the Plaintiff offers no response to Defendant AMC's bankruptcy argument.

The Court finds that it need not reach the questions of whether or how the Plaintiff must tender in order to effectuate a rescission in this case. Because the Plaintiff has not established any TILA violations, the Court finds that the question of rescission is not properly at issue, and the Court declines to rule on the proper sequence for the Plaintiff to tender. The Court notes, however, that Defendant AMC's bankruptcy argument is persuasive. Although Defendant AMC has not pointed the Court to a case dealing with a similar scenario, the Court finds the previous discharge of this very indebtedness in bankruptcy to be compelling. Although the *Handy* court held that rescission was possible in the case of a loan previously paid off, the Court doubts that the Seventh Circuit would find rescission possible in the case of a loan previously discharged in a bankruptcy proceeding. *See Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011) (stating that the rescission requirement that the borrower return the loan principal "often has the practical effect of ruling out rescission, if the borrower has already used the money to cover

urgent financial obligations"). *See also Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 768–69 (7th Cir. 2004) (recognizing the importance of "finality" in the bankruptcy context); *Case v. Wells Fargo Bank, NA*, 394 B.R. 469, 476 (Bankr. E.D. Wis. 2008) (affirming "the concept of finality in bankruptcy proceedings"); *Network Commc'ns of Ind., Inc. v. IDT Corp.*, No. 1:03-CV-0631 RLY TAB, 2004 WL 3315374, at *3 (S.D. Ind. Sept. 30, 2004) (citing *In re Arlo B. Edwards*, 962 F.2d 641, 643–45 (7th Cir. 1992) for a discussion of "the importance of finality in bankruptcy proceedings"); *In re Thomason*, 288 B.R. 809, 812 (Bankr. S.D. Ill. 2002) (discussing "the policy of providing finality in bankruptcy proceedings") (internal quotation omitted). Particularly because the Plaintiff has failed to offer any response to this argument, if the question of rescission were before the Court, the Court would be inclined to find that the previous discharge of the 2005 loan in bankruptcy makes rescission impossible. But because the issue of rescission is not before the Court, no such holding is appropriate.

**2.     *No Reasonable Jury Could Find for the Plaintiff on His Indiana UCC Claims Against Defendant AMC***

In Count II of his Fourth Amended Complaint, the Plaintiff alleges that Defendant AMC violated the Indiana Uniform Consumer Credit Code by failing to provide the information required by the Act. I.C. § 24-4.5-3-301(2) (mandating that "[t]he lender shall disclose to the debtor to whom credit is extended with respect to a consumer loan the information required by" the Truth in Lending Act). The Plaintiff also alleges that Defendant AMC's failure to honor his notice of rescission violated the Indiana UCC. *Id.* § 24-4.5-5-204(1).

Because the Court finds that summary judgment is appropriate in favor of Defendant

AMC on the Plaintiff's TILA claims, the Court also finds that no reasonable jury could conclude that the Plaintiff has stated claims under the Indiana UCC, and the Court will therefore grant Defendant AMC's Motion for Summary Judgment on Count II of the Fourth Amended Complaint.

**3.**     ***The Plaintiff Has Conceded His Count III Misrepresentation Claim Against Defendant AMC***

In his Response to Defendant AMC's Motion for Summary Judgment, the Plaintiff states that he "will concede for purposes of this Response his claims for Misrepresentation under Indiana common law." (Pl.'s Resp. 15, ECF No. 172.) Accordingly, the Court will grant Defendant AMC's Motion for Summary Judgment on Count III of the Fourth Amended Complaint.

**4.**     ***No Reasonable Jury Could Find for the Plaintiff on His Indiana Civil Mischief or Civil Deception Claims***

The Plaintiff conceded his common law misrepresentation claim, but insists that Defendant AMC's Motion for Summary Judgment must be denied on his Indiana statutory civil mischief and civil deception claims. Under the Indiana Code, a person who "knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the right of another person . . . commits criminal mischief," I.C. § 35-43-1-2(2), and a person who "suffers a pecuniary loss as a result of [such] violation . . . may bring a civil action against the person who

caused the loss," *id.* § 34-24-3-1. Similarly, a person who "knowingly or intentionally makes a false or misleading written statement with intent to obtain property" commits "deception, a Class A misdemeanor," *id.* § 35-43-5-3(a), and a person who suffers a loss as a result may also bring a civil action under I.C. § 35-24-3-1.

Defendant AMC argues in its Motion for Summary Judgment that the Plaintiff fails to establish any of his three stated claims of misrepresentation. Specifically, the Plaintiff claims that Defendant AMC misrepresented: 1) the value of the Plaintiff's home by providing an inflated appraisal; 2) its intention to charge him a prepayment penalty on the 2003 loan; and 3) the outstanding balance on the 2003 loan by listing the amount as $97,398 in the 2005 loan document at ECF No. 172-3. Defendant AMC offers arguments for why each of these claims of misrepresentation fails. The Plaintiff does not suggest that there are other misrepresentation claims that Defendant AMC omitted to argue. The Court will therefore analyze these claims using Defendant AMC's formulation. The Plaintiff does argue that because Defendant AMC did not list the specific statutory elements of civil mischief or civil deception in its Motion for Summary Judgment, did not list the elements for civil mischief until its Reply, and did not list the elements for civil deception until its Sur-Sur-Reply, Defendant AMC has waived argument on these statutory claims and the Court should deny the Motion for Summary Judgment. Defendant AMC in its Reply argues that it needed to address only the misrepresentation claim because "as a practical matter it is impossible for the civil deception and civil mischief claims to survive if the misrepresentation claim fails, since misrepresentation, civil mischief and deception are substantially similar in elements and burden of proof." (Def. AMC's Reply 3, ECF No. 174.) Nowhere does the Plaintiff address the three specific misrepresentation claims as articulated and

argued by Defendant AMC; the Plaintiff merely argues that Defendant AMC must be denied summary judgment because it has failed to address the statutory elements of civil mischief and civil deception. In its Sur-Sur-Reply, Defendant AMC argues that "the same evidence that doomed Plaintiff's common-law misrepresentation claim dooms his statutory civil mischief and deception claims as well" because its prior arguments show that there was no deception (necessary to establish the civil mischief claim) and no false or misleading written statement (necessary to establish the civil deception claim). (Def. AMC's Sur-Sur-Reply 3, ECF No. 192.)

The Court finds that the Plaintiff has failed to point the Court to admissible evidence upon which a reasonable jury could find in his favor on the civil mischief and civil deception claims. *See Marr*, 662 F.3d at 966 ("the opponent of summary judgment need only point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor."). As an introductory matter, the Court disagrees with Defendant AMC's statement that it is impossible for civil mischief and civil deception claims to survive where a common law misrepresentation claim fails. The elements for these offenses are similar, but not identical, and the Court must analyze the differences. However, because none of the three factual claims argued by the parties establishes a violation of either Indiana's civil mischief or civil deception statutes, the Court will grant Defendant AMC's Motion for Summary Judgment.

First, under Indiana's civil mischief and civil deception statutes, no reasonable jury could find in favor of the Plaintiff on his claims that Defendant AMC misrepresented the value of his home. As Defendant AMC argues, "Indiana treats an appraisal as an opinion rather than a fact," *Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 390 (7th Cir. 2007). Furthermore, a representation in an appraisal "could be fraudulent only if the appraisal's author did not believe

her own numbers." *Id.* Therefore, because there is no evidence that Defendant AMC authored the appraisal, and because in any case an appraisal is only an opinion about the value of a property, the Court finds that the undisputed facts do not make out a claim for civil mischief or for civil deception because the facts do not suggest that Defendant AMC knowingly or intentionally caused the Plaintiff to suffer pecuniary loss by deception, nor that Defendant AMC knowingly or intentionally made a false or misleading written statement with intent to obtain property. Indeed, because Defendant AMC did not perform the appraisal, the records does not suggest that Defendant AMC made the written statement at issue. Further, the Plaintiff admits that he did not believe the appraisal valuation of his home, but took the loan based on the appraisal anyway. Thus, the Plaintiff did not rely on the appraisal, which suggests that there was no deception for the purposes of civil mischief, nor a false or misleading written statement for the purposes of civil deception. For all these reasons, the Court finds that there exists no triable issue of material fact on the Plaintiff's civil mischief or civil deception claims with respect to this factual claim.

Second, under Indiana's civil mischief and civil deception statutes, no reasonable jury could find in favor of the Plaintiff on his claims that Defendant AMC misrepresented its intention to charge him a prepayment penalty on the 2003 loan. The 2003 loan document clearly states that a prepayment penalty will be assessed if the loan is refinanced within three years. The Plaintiff signed that loan document, and in so doing stated: "I agree to pay Lender a prepayment charge if I make a prepayment before the Three (3.00) year(s) anniversary of the date of this Note." (Adjustable Rate Note ¶ (5)(B), ECF No. 168-2.) The Plaintiff was on notice that a prepayment penalty would apply to his loan refinancing; it was not concealed from him. Furthermore, "representations regarding future conduct cannot support an action for fraud under

Indiana law," *ESG Technical Servs., LLC v. Advantage Health Solutions, Inc.*, No. 1:09-cv-03-WTL-TAB, 2009 WL 4746081, at *3 (S.D. Ind. Dec. 8, 2009), and because "[a] fiduciary relationship does not exist between a lender and a borrower," *Block v. Lake Mortg. Co., Inc.*, 601 N.E.2d 449, 452 (Ind. Ct. App. 1992), Defendant AMC had no duty to remind the Plaintiff about the details of his 2003 loan transaction. As above, the undisputed facts do not make out a claim for civil mischief or for civil deception because the facts do not suggest that Defendant AMC knowingly or intentionally caused the Plaintiff to suffer pecuniary loss by deception, nor that Defendant AMC knowingly or intentionally made a false or misleading written statement with intent to obtain property. No facts suggest that the Plaintiff, who undisputedly signed the 2003 loan documents, was deceived about the prepayment penalty, and thus the claim for civil mischief is unsupported. Nor do the facts suggest that Defendant AMC, by failing to remind him of his agreement, violated any fiduciary duty. Indeed, the record shows that Defendant AMC did not make a written statement on this issue, and thus the claim for civil deception is unsupported. For all these reasons, the Court finds that there exists no triable issue of material fact on the Plaintiff's civil mischief or civil deception claims with respect to this factual claim.

Third, under Indiana's civil mischief and civil deception statutes, no reasonable jury could find in favor of the Plaintiff on his claims that Defendant AMC misrepresented the outstanding balance on the 2003 loan to be $97,398.00 instead of $103,249.08. As Defendant AMC argues, the record shows that the representations to the Plaintiff in the 2005 loan documents were not deceptive and were not false or misleading. Defendant AMC represented to the Plaintiff that the "Amount of Mortgages & Liens" on his 2003 loan was $97,398. (2005 Loan Document, ECF No. 172-3.) But the Plaintiff also signed the HUD-1 Settlement Statement

before consummation of his 2005 loan which indicated that the "Mortgage Payoff to AMC Mortgage Services" would be $103,249.28. (HUD-1 Settlement Statement, ECF No. 168-7.) The Court finds that Defendant AMC made appropriate disclosures to the Plaintiff. From the record it appears that the amount of the 2003 mortgage was indeed $97,398, while the payoff for that same mortgage, due to the prepayment penalty, was indeed $103,249.28. As the Seventh Circuit has stated, "failure of the plaintiff to read the matter plainly placed before it cannot overcome the presumption that the plaintiff assented to the terms." *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) (quotation marks and brackets omitted). The Plaintiff admits that he did not study the 2005 loan documents because of a "lazy attitude." (Means Dep. 79:5–7, Sept. 10, 2008.) The facts before the Court show that the Plaintiff was not deceived, which undercuts the claim for civil mischief. The facts also indicate that Defendant AMC supplied the Plaintiff with true and accurate written statements, which vitiates the claim for civil deception. The Plaintiff ignored the contents of the documents he signed—to his detriment. But the Court finds that there exists no triable issue of material fact on the Plaintiff's civil mischief or civil deception claims with respect to this factual claim.

For all the reasons discussed above, the Court finds that no reasonable jury could find in the Plaintiff's favor on his civil mischief or civil deception claims against Defendant AMC. Accordingly, the Court will grant Defendant AMC's Motion for Summary Judgment on Counts IV and V of the Fourth Amended Complaint.

**B.      Defendant Deutsche Bank's Motion for Summary Judgment**

Defendant Deutsche Bank has also moved for summary judgment on all counts of the

34

Fourth Amended Complaint. The Plaintiff advanced the following claims against Defendant

Deutsche Bank as the assignee of the 2005 loan note: TILA violations (Count I), Indiana UCC

violations (Count II), misrepresentation (Count III), civil mischief (Count IV), and civil

deception (Count V). The Plaintiff argues Defendant Deutsche Bank is liable for its failure to

honor the Plaintiff's proper rescission notice, and for violations of the Act that were apparent on

the face of the loan documents. The Plaintiff also argues that Defendant Deutsche Bank is not a

holder in due course and therefore took the note subject to the misrepresentation, civil mischief,

and civil deception claims against Defendant AMC. Defendant Deutsche Bank argues that none

of the alleged TILA violations were apparent on the face of the loan documents, which precludes

liability on the TILA and Indiana UCC claims, and that it has holder in due course status, which

precludes any liability on the misrepresentation, civil mischief, and civil deception claims

against it.

The Plaintiff acknowledges that Defendant Deutsche Bank was not involved in the 2005

loan origination. Therefore the Plaintiff is not alleging that Defendant Deutsche Bank is directly

responsible for TILA violations. Instead, the Plaintiff alleges that Defendant Deutsche Bank

"was assigned Plaintiff's note" (Fourth Am. Compl. ¶ 3) and has TILA liability as an assignee.

The record shows that the Plaintiff's 2005 note was assigned to Defendant Deutsche Bank on

February 1, 2006. (*See* Campbell Aff. ¶ 2.) The Act states that any civil action for TILA

violations:

> which may be brought against a creditor may be maintained against any assignee of
> such creditor only if the violation for which such action or proceeding is brought is
> apparent on the face of the disclosure statement . . . . For the purpose of this section,
> a violation apparent on the face of the disclosure statement includes, but is not
> limited to (1) a disclosure which can be determined to be incomplete or inaccurate
> from the face of the disclosure statement or other documents assigned, or (2) a

disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a). The Act further states that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." *Id.* § 1641(c).

Concerning § 1641 assignee liability, the Seventh Circuit has held that "Congress has precluded liability unless the violation is apparent on the face of the disclosure statement or other assigned documents." *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 691 (7th Cir. 1998). More specifically, the *Taylor* court held that § 1641(a)

> does not impose a duty of additional inquiry on assignees. Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA.

*Id.* at 694. This limitation of assignee liability is "sensible, as a duty to inquire beyond the assigned documents would impede commerce, which depends upon the established practice of assigning commercial paper at a discount to financial institutions." *Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630, 634 n.12 (E.D. Va. 2000). Moreover, assignees are generally "not in a position to know whether a given price was set in violation of TILA, as assignees often are not present at the transaction (which may have occurred much earlier than the assignment), do not participate in the negotiation, and may not be aware of a seller's mode of conducting business." *Id.*

**1.     *Because the Plaintiff Has Not Established TILA Violations by Defendant AMC, Defendant Deutsche Bank as Assignee is Not Liable***

As a preliminary matter, the Court notes that it has already addressed the four alleged TILA violations for which the Plaintiff also claims that Defendant Deutsche Bank should be

liable as an assignee. Having found that the Plaintiff's claims that Defendant AMC violated the Act are unsupported, the Court also finds that the Plaintiff's attempts to bring those same claims against Defendant Deutsche Bank as assignee are unavailing. Because the Plaintiff has not introduced evidence overcoming summary judgment on the TILA claims against Defendant AMC, no reasonable jury could find for the Plaintiff on his identical TILA claims against Defendant Deutsche Bank as assignee, nor could a reasonable jury find for the Plaintiff on his Indiana UCC claims against Defendant Deutsche Bank. Accordingly, the Court will grant Defendant Deutsche Bank's Motion for Summary Judgment on this basis.

As an additional basis for granting Defendant Deutsche Bank's Motion for Summary Judgment, the Court finds that it need not reach the issue of whether the alleged TILA violations were apparent on the face of the loan documents. The Court does note, however, that if most of the TILA violations alleged by the Plaintiff were supported by facts in the record, it appears they would also have been apparent on the face of the loan documents. If the rescission notice had been misdated, that would have been apparent from the face of the document. If the language of the One Week Cancellation form made the Notice of Right to Cancel unclear for TILA purposes, that would have been apparent from the language of the document, and would not have depended on whether the Plaintiff specifically was confused by its wording. If the H-8 notice had been improperly given instead of the H-9 notice, then it also would have been apparent to Defendant Deutsche Bank on the face of the improper loan documents that the wrong notice had been provided. But if Defendant AMC had understated the finance charge by excluding from it charges that were not bona fide or reasonable, the Plaintiff has not shown how that would have been apparent to Defendant Deutsche Bank on the face of the documents received. In conclusion,

although the Court need not reach the issue of whether Defendant Deutsche Bank could be liable for TILA violations that the Court has already found to be unsupported, the Court finds that in three cases Defendant Deutsche Bank could be liable for Defendant AMC's TILA violations because it appears such violations would have been apparent on the face of the documents. But in the case of the TILA claim that Defendant AMC understated the finance charge, the Court finds that the Plaintiff has failed to show how Defendant Deutsche Bank as assignee could have been liable for that violation.

As for the Plaintiff's theory of assignee liability that holds assignees liable for failing to honor proper requests for rescission, the Court agrees with the theory, but finds that the Plaintiff failed to show that he actually had the right to rescind the transaction at the time he sent his notice of rescission to Defendant Deutsche Bank. Accordingly, Defendant Deutsche Bank did not violate the Act or the Indiana UCC when it denied his improper rescission request, and the Court will grant Defendant Deutsche Bank's Motion for Summary Judgment on this issue.

**2.**     ***Because Defendant Deutsche Bank was a Holder in Due Course, No Reasonable Jury Could Find in Favor of the Plaintiff on His Misrepresentation, Civil Mischief, or Civil Deception Claims***

The Plaintiff alleges that because Defendant Deutsche Bank was not a holder in due course of the 2005 loan note, it took the note subject to the Plaintiff's state law claims of misrepresentation (Count III), civil mischief (Count IV), and civil deception (Count V). (*See* Fourth Am. Compl. ¶¶ 89, 92, 95.) Defendant Deutsche Bank urges that it was a holder in due course, and therefore is not subject to suit for Defendant AMC's alleged violations under Indiana law. The Plaintiff argues in response that although the evidence submitted by Defendant

Deutsche Bank suggests it became the holder of the note on February 1, 2006, that evidence does not contain a specific endorsement by Defendant AMC to Defendant Deutsche Bank, and thus Defendant Deutsche Bank has failed to show that it was the holder of the note on February 1, 2006. The Plaintiff also argues that when he sent his rescission notice to Defendant AMC in August 2006, it was Defendant AMC, not Defendant Deutsche Bank, that responded, suggesting that Defendant Deutsche Bank was not the holder of the note. Defendant Deutsche Bank replies that the note was properly endorsed, and that it held the 2005 loan note as of February 1, 2006, making it the holder in due course.

As an initial matter, the Court notes that the Plaintiff chose to abandon his Count III misrepresentation claim against Defendant AMC, but did not do so against Defendant Deutsche Bank. The Plaintiff offers no argument with respect to the merits of this claim,[7] however, and the Court finds that the Plaintiff has waived this claim by offering no argument. *See Harvey*, 649 F.3d at 532 ("perfunctory and undeveloped arguments . . . are waived") (quotation marks omitted). Furthermore, the Court notes that the misrepresentation claim against Defendant Deutsche Bank is identical to the misrepresentation claim against Defendant AMC which the Plaintiff has conceded. Therefore, the Court will grant Defendant Deutsche Bank's Motion for Summary Judgment on this issue.

Under Indiana law, the holder of an instrument is a holder in due course if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
(2) the holder took the instrument:

---

[7]The Plaintiff does argue that this claim should go forward because Defendant Deutsche Bank was not a holder in due course; but the Plaintiff offers no arguments on the merits of his misrepresentation claim against Defendant Deutsche Bank.

(A) for value;

(B) in good faith;

(C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to the payment of another instrument issued as part of the same series;

(D) without notice that the instrument contains an unauthorized signature or has been altered;

(E) without notice of any claim to the instrument . . .; and

(F) without notice that any party has a defense or claim in recoupment . . . .

I.C. § 26-1-3.1-302. The Indiana Code defines a holder as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person if the identified person is in possession of the instrument." *Id.* § 26-1-1-201(20)(A). Negotiation of an instrument generally "requires transfer of possession of the instrument and its endorsement by the holder." *Id.* § 26-1-3.1-201(b). Under the Uniform Commercial Code, "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." U.C.C. § 3-204(a). Finally,

[a] person taking an instrument, other than a person having the rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

I.C. § 26-1-3.1-306.

Section 2.01 of the Pooling and Servicing Agreement indicates that Defendant AMC did "transfer, assign, set over and otherwise convey to [Defendant Deutsche Bank] without recourse . . . all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule." (Pooling and Servicing Agreement § 2.01, ECF No. 168-18 at 86.) Defendants AMC and Deutsche Bank both indorsed the Pooling and Servicing Agreement. (*Id.*, ECF No. 168-18 at

198, 201.) In a sworn affidavit, Barbara Campbell, "a Vice President of Deutsche Bank National Trust Company," states that the assignment of loans outlined in the Pooling and Servicing Agreement dated February 1, 2006, "includes the loan that is the subject of this action for borrower Rodney S. Means for the property located at 7611 Maple Ave., Gary, Indiana 46403." (Campbell Aff. ¶¶ 1 & 2.)

The Court finds, first, that the Plaintiff's underlying claims for misrepresentation, civil mischief, and civil deception against Defendant Deutsche Bank are the same as the claims for misrepresentation, civil mischief, and civil deception against Defendant AMC, and that summary judgment is appropriate on these claims for the same reasons as it was appropriate for the claims against Defendant AMC.

Furthermore, the Court finds that Defendant Deutsche Bank has produced evidence showing that it was the holder of the Plaintiff's 2005 note on February 1, 2006, that it took the note for value without notice of any claims against the instrument, and that Defendant Deutsche Bank is therefore a holder in due course of the Plaintiff's 2005 loan note. The Plaintiff states in his Fourth Amended Complaint that Defendant Deutsche Bank took the note "after the litigation was commenced" (Fourth Am. Compl. ¶ 3), but this assertion is not supported by the record. The Plaintiff argues that Campbell's affidavit is insufficient proof that Defendant Deutsche Bank took the note on February 1, 2006, and that Defendant AMC's response to the Plaintiff's August 2006 notice of rescission suggests Defendant Deutsche Bank was not the current holder. But the Plaintiff has produced no evidence undercutting Campbell's sworn affidavit stating that Defendant Deutsche Bank took the note on February 1, 2006. No evidence suggests that Defendant AMC's written response to the Plaintiff's rescission request gave it a status it did not

have in September 2006, or that it vitiated Defendant Deutsche Bank's status as the holder of the note at that time. Further, it appears from the record that Defendant AMC's indorsement of the Pooling and Servicing Agreement properly transferred the 2005 loan note to Defendant Deutsche Bank. Because Defendant Deutsche Bank took the 2005 loan note as a holder in due course, it took the note free of the Plaintiff's civil mischief and civil deception claims. Accordingly, because the record indicates that Defendant Deutsche Bank took the 2005 loan note as a holder in due course, the Court will grant Defendant Deutsche Bank's Motion for Summary Judgment on this issue because no reasonable jury could find in the Plaintiff's favor on the civil mischief or civil deception claims.[8]

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant Deutsche Bank's Motion for Summary Judgment [ECF No. 155] and GRANTS Defendant Ameriquest Mortgage Company's Motion for Summary Judgment [ECF No. 158]. The Clerk is directed to enter judgment in favor of Defendants Deutsche Bank and Ameriquest Mortgage Company and against the Plaintiff.

SO ORDERED on October 9, 2012.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[8]Defendant Deutsche Bank's status as a holder in due course also vitiates the Plaintiff's Count III claim for misrepresentation against Defendant Deutsche Bank, and is an additional basis for the Court to grant the Motion for Summary Judgment on the Plaintiff's Count III claim against Defendant Deutsche Bank.

FORT WAYNE DIVISION